JAMES MEYER, ABEL WOOD, JR., FRANCIS PUSTKA, and P & S PACIFIC, INC., Plaintiffs-Appellants, *v.* CITY AND COUNTY OF HONOLULU, HONOLULU POLICE DEPARTMENT, FRANCIS KEALA, MODESTO RAMOS, JR., and ROBERT BURNS, Defendants-Appellees

NO. 10705

(CIVIL NO. 72056)

SEPTEMBER 17, 1986

HEEN, ACTING C.J., TANAKA, J., AND CIRCUIT JUDGE PATRICK K.S.L. YIM, IN PLACE OF BURNS, C.J., RECUSED

OPINION OF THE COURT BY TANAKA, J.

Plaintiffs James Meyer (Meyer), Abel Wood, Jr. (Wood), Francis Pustka (Pustka), and P & S Pacific, Inc. (P & S) (collectively Plaintiffs) appeal from (1) the summary judgment in favor of defendant City and County of Honolulu (City)[1] and Francis Keala (Keala) and (2) the

---

[1]The appeal is also from the summary judgment in favor of the Honolulu Police Department (HPD). "[T]he legislature duly delegated the administration of police . . . matters . . . to the counties," *Hawaii Government Employees' Ass'n v. County of Maui,* 59 Haw. 65, 79, 576 P.2d 1029, 1038 (1978), and under article VI, chapters 1 and 6, of the Revised Charter of the City & County of Honolulu (1984 ed.), the HPD is a department placed under the supervision of the managing director of the City and County of Honolulu (City). Not being an independent legal entity, the HPD should have been dismissed as a separate defendant. All liability charged against the HPD would be charged against defendant City. *See Waller v. Butkovich,* 584 F. Supp. 909, 925 (M.D. N.C. 1984). Thus, in this opinion, the claim against the HPD is treated as a claim against the City.

judgment based on the jury's special verdict in favor of defendants Modesto Ramos, Jr. (Ramos) and Robert Burns (Burns). Plaintiffs contend that (1) the trial court erred in granting the summary judgment because there were genuine issues of material fact for the jury to resolve and (2) the erroneous granting of certain motions in limine resulted in the unfavorable verdict and judgment. We affirm.

This is basically an alleged police brutality case arising out of an incident that occurred in the early morning hours on July 5, 1980, in Wahiawa, Oahu. Ramos and Burns are police officers with the Honolulu Police Department (HPD). Keala was then the HPD's chief of police.

On June 29, 1982, Plaintiffs filed a five-count complaint.[2] Count I alleged that Ramos and Burns "intentionally, willfully and maliciously attacked and beat Plaintiffs Meyer, Wood and Pustka, without provocation[.]" Count II alleged that Ramos and Burns arrested Meyer and Wood without "probable cause or an arrest warrant[.]" Count III alleged that Ramos and Burns "violated 42 U.S.C. §§ 1983 and 1985" by "depriving Plaintiffs of their civil rights while acting under color of state law," and that the City was responsible for their acts "under the theory of respondent [sic] superior."[3] Count IV alleged that the City and Keala were negligent in retaining Ramos on the police force despite "numerous charges of brutality" filed and disciplinary action taken against him. Count V alleged that because of the tortious acts of Ramos and Burns, P & S "lost the services of its employees Meyer and Wood, and suffered special damages[.]"

On November 28, 1984, the trial court granted defendants' motion for partial summary judgment as to: (1) all claims against Keala, (2) the 42 U.S.C. § 1983 claim against the City, and (3) the 42 U.S.C. § 1985 claim against all defendants.

On the morning of March 25, 1985 when trial was scheduled to begin, defense counsel filed five motions in limine which the trial court

---

[2]The counts were titled as follows: "COUNT I - CIVIL ASSAULT AND BATTERY," "COUNT II - FALSE ARREST," "COUNT III - VIOLATION OF CIVIL RIGHTS," "COUNT IV - NEGLIGENCE," and "COUNT V - INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS."

[3]Although Count III does not specifically name defendant Francis Keala (Keala), the use of the word "Defendants" in the count may be deemed to include Keala.

granted in most part. Thereafter, the jury trial commenced. After Plaintiffs rested, the court directed a verdict in Burns' favor on Wood's assault and battery claim.[4] On April 3, 1985, the jury rendered a favorable verdict for Ramos and Burns. After judgment was entered on the verdict, Plaintiffs appealed.

We will first discuss Plaintiffs' challenge of the in limine orders and then examine the summary judgment in favor of Keala and the City.

## I. EVIDENCE OF TERMINATION OF PRIOR CRIMINAL PROCEEDINGS

Plaintiffs contend the trial court erred in granting the defense motion in limine "which precluded evidence that charges against Meyer were dropped from being presented to the jury" on the basis that such evidence was admissible to show "good grounds for a subsequent malicious prosecution action by the supposed defendant." We disagree.

Plaintiffs' contention would have been correct if Meyer had a pending claim for malicious prosecution, an essential element of which would be "that the prior proceedings were terminated in the [plaintiff's] favor[.]" *Brodie v. Hawaii Automotive Retail Gasoline Dealers Ass'n, Inc.,* 2 Haw. App. 316, 318, 631 P.2d 600, 602 (1981), *rev'd on other grounds,* 65 Haw. 598, 655 P.2d 863 (1982). However, the trial court ruled Meyer had "no claim for malicious prosecution,"[5] Transcript by Nakata, Vol. I at 10, and Meyer has not appealed this ruling.

Meyer alleged a claim for false arrest. Since "a person who is falsely arrested is at the same time falsely imprisoned," false arrest and false imprisonment as tort claims are "distinguishable only in terminology." 32 Am. Jur. 2d *False Imprisonment* § 2 at 59 (1982). For both false arrest and false imprisonment, the essential elements are "(1) the detention or

---

[4]The directed verdict was based on the testimony of plaintiff Abel Wood, Jr. (Wood) that it was Officer Ramos rather than Officer Burns who had assaulted him.

[5]The trial court ruled that Wood alleged a claim for malicious prosecution and denied the motion in limine as to him.

We deplore Plaintiffs' sloppy pleading practice. Although they had specifically titled each of the five counts in the complaint, *see* note 2, *supra,* Plaintiffs later convinced the trial court that the complaint alleged, as to Wood, claims for malicious prosecution, conspiracy to maliciously prosecute, and false imprisonment without even amending the complaint.

restraint of one against his will, and (2) the unlawfulness of such detention or restraint." *Id.* at § 5. *See also* W. Prosser & W. Keeton, *Law of Torts,* § 11 (5th ed. 1984).

Favorable termination of prior criminal proceedings in favor of the plaintiff is not an element of false arrest. Therefore, the fact that charges against Meyer were dropped in the prior criminal proceeding was not admissible into evidence and the trial court did not err. *See Leong v. Honolulu Rapid Transit,* 52 Haw. 138, 472 P.2d 505 (1970); *Ferreira v. General Motors Corp.,* 4 Haw. App. 12, 657 P.2d 1066 (1983).

## II. EVIDENCE OF CONSPIRACY

Plaintiffs next contend the trial court erred in granting the defense motion in limine precluding "testimony as to appellees' conspiracy to violate appellants' civil rights from being presented to the jury." This contention is not supported by the record.

The only allegation of conspiracy in the complaint appears in count III regarding violation of Meyer's and Wood's civil rights. Paragraph 20(c) alleges that "Defendants ... [i]nitiated, aided and conspired for the malicious and unfounded criminal prosecution of Plaintiff Wood[.]" At the time the trial court granted the motion in limine, the City and Keala had already prevailed on the 42 U.S.C. §§ 1983 and 1985[6] claims by way of summary judgment.

Thus, Plaintiffs were properly precluded from presenting any evidence of conspiracy involving the City and Keala. The record discloses that Plaintiffs were permitted to elicit a complete range of testimony of Ramos' and Burns' acts, individually and in concert, statements, and feelings regarding the arrest of Meyer and the arrest and prosecution of Wood. Consequently, if the trial court's in limine order was wrong with respect to Ramos and Burns, there was no prejudicial effect and such error was harmless.

---

[6] 42 U.S.C. § 1985 (1982) is titled "Conspiracy to interfere with civil rights" and under subsection (3) thereof, a person deprived of his civil rights by the conspiracies of private persons has a right of action for damages against any one or more of the conspirators.

Conspiracy claims can also be made under 42 U.S.C. § 1983. *See Briley v. California,* 564 F.2d 849 (9th Cir. 1977); *Rundle v. Madigan,* 356 F. Supp. 1048 (N.D. Cal. 1972).

### III. EVIDENCE OF FUTURE DAMAGES

Citing *McKeague v. Talbert,* 3 Haw. App. 646, 658 P.2d 898 (1983), Plaintiffs claim the trial court erred in granting the defense motion in limine excluding "evidence of Meyer's permanent and future damages" from being presented to the jury by other than a medical expert since Meyer's damages were "plainly apparent." We disagree.

*McKeague* is distinguishable. In *McKeague,* the defendant objected to the jury instruction on future damages, claiming a lack of expert testimony "establishing future pain and suffering as a reasonable medical probability." *Id.* 3 Haw. App. at 658, 658 P.2d at 907. However, a neurologist, who had treated the plaintiff, testified that the plaintiff "would achieve relatively complete recovery within four to eight months" after the plaintiff's medical examination which occurred on September 15, 1980. *Id.* 3 Haw. App. at 659, 658 P.2d at 908. The trial began on February 4, 1981. This court held the neurologist's testimony "sufficient for the jury to find that plaintiff would continue to face pain and suffering at least until the time [the neurologist] indicated probable complete recovery[.]" *Id.*

Here, in their November 28, 1984 "Amended Pre-Trial Statement" Plaintiffs listed Noboru Oishi, M.D. (Dr. Oishi), as "Meyer's physician" who would testify "as to Plaintiff Meyer's injuries and damages."[7] However, at the December 10, 1984 deposition, Dr. Oishi was asked whether Meyer had sustained any kind of permanent injury as a result of the July 5, 1980 incident. Dr. Oishi testified that Meyer was "pretty well recovered." Deposition of Dr. Oishi at 45. Unlike *McKeague* where the plaintiff's suffering still existed at the time of trial and was diagnosed to last probably three-and-one-half months longer, Meyer was "pretty well recovered" when the motion in limine was filed on March 25, 1985.

Therefore, we find no abuse of discretion[8] in the trial court's ruling to exclude the admission of evidence of Meyer's permanent and future

---

[7]Although Plaintiffs listed Penny Iboshi, Executive Director of the Hemophilia Foundation of Hawaii, in their January 30, 1985 "Second Amended Pre-Trial Statement" to testify as to Meyer's injuries related to his hemophilia, she was listed as a lay witness

[8]Since "[t]he granting or denying of a motion in limine is within the trial court's inherent power to exclude or admit evidence[,]" the applicable standard of review is the abuse of discretion test. *Lussier v. Mau-Van Development, Inc. I,* 4 Haw. App. 359, 392, 667 P.2d 804, 826 (1983).

damages in the absence of expert testimony substantiating the claim. *See Bachran v. Morishige,* 52 Haw. 61, 469 P.2d 808 (1970); *Franco v. Fujimoto,* 47 Haw. 408, 390 P.2d 740 (1964) (overruled in part on other grounds, *Barretto v. Akau,* 51 Haw. 383, 393, 463 P.2d 917, 923 (1969) ).

## IV. CHARACTER EVIDENCE

Plaintiffs argue the trial court erred in granting the defense motion in limine excluding evidence of "the very violent reputations and characters" of Ramos and Burns. We disagree.

The motion in limine sought to exclude evidence of "Ramos' and Burns' alleged propensities for violent or belligerent conduct" through "[s]pecific instances of violent or belligerent acts allegedly committed by Defendants Ramos and Burns . . . including . . . other civil lawsuits, Honolulu Police Commission complaints, and complaints made to the Honolulu Police Department." In their memorandum in opposition, Plaintiffs cited *Feliciano v. City & County,* 62 Haw. 88, 611 P.2d 989 (1980), and argued that such evidence was admissible.

In *Feliciano,* the supreme court held as follows:

It is well-settled that evidence of the good or bad character of either party to a civil action is generally inadmissible. . . . In civil actions for assault and battery, however, there are two firmly established exceptions to the rule. First, where a defendant in a civil action for assault and battery pleads self-defense, he may introduce evidence of the plaintiff's reputation for violent behavior if he proves it was known to him. . . . Second, irrespective of previous knowledge, where in a civil action for assault there is an issue as to who committed the first act of aggression, evidence of the good or bad reputation of both plaintiff and defendant for peacefulness is also admissible.

*Id.* 62 Haw. at 91-92, 611 P.2d at 991-92 (citations omitted).

Plaintiffs claim the "key question" in this case is " 'who struck the first blow?' " Consequently, they assert *Feliciano's* second exception is applicable and character evidence of good or bad reputation is admissible.

Since the *Feliciano* decision, the Hawaii Rules of Evidence (HRE), Act 164, 1980 Haw. Sess. Laws (Special Pamphlet), became effective on January 1, 1981. We must therefore apply, not the *Feliciano* exception, but Rule 404, HRE, which provides:

Character evidence not admissible to prove conduct; exceptions;

other crimes. (a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;

(3) Character of witness. Evidence of the character of a witness, as provided in rules 607, 608, 609, and 609.1.

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible where such evidence is probative of any other fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

Rule 404(a) bars character evidence in civil actions "when offered circumstantially to prove likelihood of particular conduct on a particular occasion." Rule 404 Commentary. Putting it another way, the "circumstantial use of character" is not permitted. C. McCormick, *Law of Evidence* § 188 at 554 (3d ed. E. Cleary 1984). Exceptions (1) and (2) in Rule 404(a) allow the circumstantial use of character. However, because of the use of the words "accused" and "prosecutor" and in view of the Rule 404 Commentary, those exceptions are applicable in criminal cases only.[9] *See* 2 J. Weinstein & M. Berger, *Weinstein's Evidence* (1985). We therefore hold that Rule 404(a) has abrogated *Feliciano's* second exception and Plaintiffs' reliance on *Feliciano* was misplaced.

---

[9] The Iowa Rule of Evidence 404(a)(2) includes a subsection (B) which reads:

(B) *In civil cases.* Evidence of character for violence of the *victim* of assaultive conduct offered on the issue of self defense by a party accused of the assaultive conduct, or evidence of peaceable character to rebut the same;

*Klaes v Scholl,* 375 N.W.2d 671, 674 (Iowa 1985).

Moreover, Rule 404(b) precludes the use of "evidence of any specific instance of conduct . . . when the only relevance is in the two-step inference from 'other' conduct to general character and then 'to show that he acted in conformity therewith' on the occasion in question." Rule 404 Commentary. When evidence of "other crimes, wrongs, or acts" are offered for specified purposes other than mere character and propensity, Rule 404(b) provides that it "*may* be admissible provided the Rule 403 test is met."[10] *Id.* Here, the in limine order properly excluded evidence of "other crimes, wrongs, or acts" to be used to prove Ramos' and Burns' character and propensity for violence from which to inferentially show that in conformance with such character and propensity they committed the assaultive acts on July 5, 1980.

Rule 404 "does not deal with the situation where the character of a person is itself an element of a claim or defense." Rule 404 Commentary. In other words, "character in issue" is beyond the scope of Rule 404. 22 C. Wright & K. Graham, Federal Practice & Procedure: *Evidence* § 5235 (1978). Further, Rule 405(b) expressly provides that proof of "specific instances of his conduct" may be made where "character or a trait of character of a person is an essential element of a charge, claim, or defense[.]" However, in this case, the character of violence or aggressiveness of Ramos or Burns was not an essential element of a claim of assault and battery or defense of self-defense. The character was simply probative of an element of the claim or defense.

Accordingly, the trial court did not abuse its discretion in granting the motion in limine regarding the character evidence.

## V. SUMMARY JUDGMENT ON NEGLIGENCE CLAIM

Plaintiffs contend generally that the trial court erred in granting summary judgment to the City and Keala. Because summary judgment was granted regarding all claims against Keala, we assume that Plaintiffs are challenging the summary judgment in Keala's favor on the count IV negligence claim. However, Plaintiffs have not argued this point in their briefs. In arguing that summary judgment was improper,

---

[10]Where the defendant pleads self-defense in a civil assault and battery case, the defendant may prove his knowledge of the plaintiff's violent character by evidence of other "crimes, wrongs, or acts" under Rule 404(b), Hawaii Rules of Evidence.

Plaintiffs cite four cases: *Brandon v. Holt*, 469 U.S. 464, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985); *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *Anthony v. Baker*, 767 F.2d 657 (10th Cir. 1985); and *Rymer v. Davis*, 754 F.2d 198 (6th Cir. 1984). All of these cases involve 42 U.S.C. § 1983 claims,[11] not negligence claims.

We therefore hold that Plaintiffs have waived this contention. *See Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 595 P.2d 1066 (1979); *Johnson v. Robert's Hawaii Tour, Inc.*, 4 Haw. App. 175, 664 P.2d 262 (1983).

Regarding the City, it did not seek nor obtain a summary judgment on the negligence count. However, Plaintiffs abandoned their negligence claim against the City by failing to assert that claim at trial.

## VI. SUMMARY JUDGMENT ON 42 U.S.C. § 1983 CLAIM

Plaintiffs assert the trial court erroneously granted the City and Keala summary judgment on the 42 U.S.C. § 1983[12] claim under count III.[13] The jury verdict finding that neither Ramos nor Burns was liable regarding the violation of Meyer's and Wood's constitutional rights claim renders this assertion moot.

A municipality has no § 1983 liability under the doctrine of respondeat superior. *Monell v. New York City Dept. of Social Services, supra.* "[I]t is liable only if its employees deprived plaintiff of [his] constitutional rights pursuant to a policy or custom of the city." *Varela v. Jones*, 746 F.2d 1413, 1418 (10th Cir. 1984). Since the jury found that Ramos

---

[11]*See* note 12, *infra.*

[12]42 U.S.C. § 1983 (1982) provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[13]Plaintiffs also contend that the trial court erred in granting summary judgment in favor of the City and Keala as to "all issues in this case arising out of Title 42 U.S.C § 1985." However, since Plaintiffs failed to address this point in their briefs, it does not merit consideration on appeal. *Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 595 P.2d 1066 (1979); *Johnson v. Robert's Hawaii Tour, Inc.*, 4 Haw. App. 175, 664 P.2d 262 (1983).

and Burns did not deprive Meyer and Wood of their constitutional rights, *a fortiori,* the City cannot be liable under § 1983.

Regarding Keala, if count III alleges a § 1983 claim against him, it is in his official capacity as chief of police. In his official capacity, Keala's position is like that of the City. *See Brandon v. Holt, supra.* Like the City, Keala cannot be liable under § 1983 if police officers Ramos and Burns were not liable.

## VII. CONCLUSION

For the reasons set forth above, we affirm the summary judgment in favor of the City and Keala and the judgment based on the jury verdict in favor of Ramos and Burns.

Affirmed.

*Fred Paul Benco* for plaintiffs-appellants.

*James R. Aiona, Jr.,* Deputy Corporation Counsel, for defendants-appellees.